Skip Navigation Links                Need Help? Call 1-800-515-4577, ext. 6511



**HELP RESOURCES** [CL]

Classification & Staffing    EEO    Employee Relations    Labor Relations    Pay & Benefits    Workers' Comp

Recent Case Decisions | USC-CFR-PL-FR | Forms | Policy & Guidance | Quick Start Guides | News Archive | Checklists Plus

**SEARCH**

Search for:

**Search In:**
All Databases

[Go!]

Advanced Search
Case Decisions Search
Topical Index Search

**FEATURES**

My cyberFEDS®

Free e-Updates

Table of Contents

What's New

Events

Congressional Roundup

Mentor/SmartAnswers

Links

Online Store

Quality Guarantee

LRP Publications Home

Contact Us

**AGENCY DOCUMENTS**

For agency-specific content, select an agency from the list.

Agency Name:
AID

[Go!]

▶ **Home**
Home > Case (Full Text)

| Current Results | |
|---|---|
| 104 LRP 12735 | WILBERT B. HARRIS, Appellant, v. UNITED STATES POSTAL SERVICE, Agency. |
| **103 LRP 16433** | **Harris v. U.S. Postal Service** |
| 102 LRP 40324 | Harris v. U.S. Postal Service |

Back to Search Results

Printable Version
PDF Version
First Match

103 LRP 16433

### <WILBERT B. HARRIS >, Appellant, v. UNITED STATES POST SERVICE, Agency.

## U.S. Merit Systems Protection Board, Washington Regional O

## DC-0752-02-0771-I-2

## March 25, 2003

### Full Text

Initial Decision
Background
Analysis and Findings
Burdens of proof
The agency has proven its charge of failure to follow instructions by a preponderanc evidence.
The appellant did not establish by preponderant evidence that he reasonably believe obedience to the agency's instructions would place him at imminent risk of death or se bodily injury.
The appellant failed to prove by preponderant evidence his claim of retaliation for pr EEO activities.
The penalty of removal is reasonable for the sustained charge and promotes the effic the service.
Decision

### APPEARANCES:

John P. Racin, Esquire, Weissbrodt & Racin, Washington, D.C., appellant.

Peter J. Henry, Esquire, Washington, D.C., for the agency.

## Initial Decision

The agency removed the appellant effective August 30, 2002, fr
position of Machine Operator C, Level 5, at the agency's Mail Equ
Shops. The appellant timely appealed the agency's action to the E
Washington Regional Office. The Board has jurisdiction ov
appellant's appeal because he is a preference-eligible employee
U.S. Postal Service. *See* 5 U.S.C. §§ 7511-7513, 7701. For the r
discussed below, the agency's removal action is AFFIRMED.

## Background

Prior to his removal, the appellant worked as a Machine Operator
U.S. Postal Service at its Lock and Key Shop in Washington
Approximately 5 million keys for post office boxes and 250,000 arrov
are produced in this shop. Hearing Testimony (HT), Worth Testimon
arrow locks are used in all of the street mailboxes throughout the c
Appeal File, MSPB Docket No. DC-0752-0771-I-1 (AF1), Tab 4,
4a. The appellant operated the Arrow Lock Assembly Machine (
that produces the arrow locks. *Id.*

The ALAM consists of various operating points, or "cells." *Id.* Pa
added to the locks as they pass through each cell in different sta
completion. *Id.* Periodically, lock parts being assembled in a cell j
they are installed. *Id.* Machine Operators such as the appella
required to clear "soft [minor] jams" while shop mechanics repair
jams." HT, Worth Testimony. Clearing a minor jam is usually a simpl
requiring no more than a flick of a screwdriver after the cell is pc
down. AF1, Tab 4, Subtab 4a; Appeal File MSPB Docket No. DC
0771-I-2 (AF2)[1] , Tab 10, Subtabs 10, 11 (ALAM photos); HT,
Testimony.

Clearing minor jams is expressly included in the duties of the M
Operator C position. AF1, Tab 4, Subtabs 4a, 4t; HT, Worth Test
The appellant bid for the Machine Operator C position in April 2
response to a vacancy announcement posted on all employee k
boards. AF1, Tab 4, Subtabs 4a, 4t. The vacancy announcement in
the position description and position requirements, and the appellan
that clearing minor jams was included in the duties of the M
Operator C position. *Id.;* HT, Appellant Testimony.

The appellant performed his initial "30-day training" in the M
Operator C position from May 5 to July 1, 2001, and he then wor
another position until returning to the Machine Operator C position
spring of 2002. HT, Appellant Testimony. The appellant initially co
with instructions and cleared minor jams from the ALAM, but assert
clearing jams should be performed by a mechanic and not by him
Tab 4, Subtabs 4a, 4j at 7; AF2, Tab 10, Subtab 19. The appellan

started to refuse to comply with instructions to clear minor jams. Thi
confrontation with his supervisor, Marilyn Washington, and
appellant's 14-day suspension for failure to follow instructions. AF1,
Subtab 4j at 7; AF2 Tab 10, Subtabs 17, 19. At about this tin
appellant filed a complaint with the Occupational Safety &
Administration (OSHA), and OSHA issued a safety citation to the a
AF2, Tab 12, Subtabs D, G.

Because the appellant continued to refuse to perform his duties
ALAM, the agency proposed his removal on July 1, 2002, for fa
follow instructions. AF1, Tab 4, Subtab 4l. The appellant did not r
the proposed removal, and the Plant Manager, John Worth, fou
charge supported by the evidence and warranted the appellant's re
Id., Subtab 4e. In reaching his decision, Worth considered the dis
effects of the appellant's refusal to work on the ALAM, the app
lengthy employment with the agency, and the appellant's ex
disciplinary record of three 14-day suspensions, one 7-day suspensi
a letter of warning. Id.; HT, Worth Testimony. The appellant's remov
effective August 30, 2002, and the appellant timely appealed. AF1, T

On appeal the appellant alleges, among other things, that the age:
not prove its charge, he was entitled to refuse the agency's instr
because working on the ALAM was unsafe, and the agency's acti
taken in retaliation for the appellant's prior equal employment opp
(EEO) activities. AF1, Tab 1; AF2, Tabs 8, 11; Hearing Tapes, App
Closing Statement.

## Analysis and Findings

### Burdens of proof

The agency has the burden to prove the merits of its case
preponderance of the evidence, and the appellant has the burden t
any affirmative defenses and his retaliation claim by a preponderan
the evidence. 5 C.F.R. § 1201.56(a). Preponderance of the evide
defined by regulation as the degree of relevant evidence that a reas
person, considering the record as a whole, would accept as suffic
find that a contested fact is more likely to be true than untrue. 5 C
1201.56(c)(2). The agency also must show that the penalty it select
within the bounds of reasonableness. *Douglas v. Veterans Adminis*
5 M.S.P.R. 280, 302, 306 (1981).

### The agency has proven its charge of failure to follow instructio
### preponderance of the evidence.

An agency may prove a charge of failure to follow instructio
establishing that proper instructions were given to an employee a
employee failed to follow them, without regard to whether the failu
intentional or unintentional.[2] *See* *Hamilton v. U.S. Postal Servi*
M.S.P.R. 547, 556 (1996). Here, the agency has essentially char

appellant with the failure to follow the instructions of sup
Washington to operate the ALAM on June 28, 2002. AF1, Tab 4,
4I.

The record shows that the agency, on numerous occasions betwee
12, and June 28, 2002, instructed the appellant to operate the
(including clearing minor jams). AF2, Tab 10, Subtabs 17, 19. Sup
Washington left no doubt that her instructions were mandatory wh
issued a 14-day suspension to the appellant on June 14, 2002,
refusal to operate the ALAM on June 12. AF1, Tab 4, Sub
Uncontradicted record evidence establishes that the appellant refu
supervisor's instructions, and the appellant admits that he refuse
instructions on June 12, 2002. AF2, Tab 10, Subtabs 15, 17, 1
Appellant Testimony. The record also establishes that operating the
was the major duty of the Machine Operator C position held
appellant and essential to arrow lock production by the agency. AF
4, Subtabs 4a, 4t; HT, Worth Testimony, Brant Testimony, Ap
Testimony.

The appellant asserts, though, that he was never given an order to v
the ALAM after June 12, 2002, but was merely "requested" to do s
Tab 11 at 4; HT, Appellant Testimony. The appellant also claims,
reference to any law, regulation, or the collective bargaining agre
that he was not give a proper "order" because a third party was not
with him and his supervisor when the instructions were given. Id.
regard, the agency gave the appellant numerous instructions to c
the ALAM, repeatedly ordered him "off the clock" when he refuse
suspended him for refusing instructions on June 12, 2002. AF2, 1
Subtabs 15, 17 (Appellant's handwritten note), 19. Under
circumstances, I find incredible the appellant's assertion that he con
the agency's instructions mere requests that he could refuse,
supervisor Washington only used "directive-type" instructions that
include the words "direct order." See Bennett v.Department of
Force, 84 M.S.P.R. 132, 139 (1999), citing Johnson v. Departn
Justice, 61 M.S.P.R. 110 (1994) (the use of terminology such as "w
"need," though somewhat equivocal, would not, in itself, support a
that the appellant was not given an order he was required to
overruled on other grounds, Hamilton, 71 M.S.P.R. 547; Stipula
Testimony, Marilyn Washington. Further, the appellant has not ide
nor have I found, any legal requirement for a third person to be
when a supervisor gives a subordinate employee work instructions.

I thus find the agency has established by preponderant eviden
Washington gave proper instructions to the appellant to operate the
on June 28, 2002, and he failed to follow those instructions.

**The appellant did not establish by preponderant evidence tha
reasonably believed obedience to the agency's instructions wou
him at imminent risk of death or serious bodily injury.**

The appellant asserts that he was justified in failing to follow the a(
instructions because obedience would have placed him in a
dangerous situation. AF2, Tab 11 at 4; Tab 13 at 3. An employee d(
have an unfettered right to disregard an order merely because t
substantial reason to believe the order is not proper; he must fi$t
with the order and register his complaint or grievance. See N.
Department of Health & Human Services, 707 F.2d 1384, 1387 (F(
1983) (Although management may be viewed as incompetent
employee, this is no excuse for not doing assigned duties). The Bo:
recognized, though, an exception to this rule in certain
circumstances when obedience would place the employee in a
dangerous situation. Cooke v. U.S. Postal Service, 67 M.S.P.R. 40
08 (1995); Gomez v. Department of Agriculture, 63 M.S.P.R. 36, 39
Gragg v. Department of the Air Force, 13 M.S.P.R. 296, 299, 3
(1982). Thus, an employee may be justified in refusing an orde
employee reasonably believes his obedience would result in his im
death or serious injury. See Larson v. Department of the Army, 28
1350, 1354-55 (2001); Blocker v. Department of the Army, 6 M.S.P.
469 (1981).

The Board's case law regarding dangerous working conditions
genesis with the United States Supreme Court's decision in W.
Corp. v. Marshall, 445 U.S. 1 (1980). See Gragg, 13 M.S.P.R. at 2
Blocker, 6 M.S.P.R. at 469. In Whirlpool, two employees refu
perform maintenance duties on a wire mesh screen suspended abo
plant floor after several other employees had fallen through it and (
to his death. 445 U.S. at 5-6. Whirlpool required the employees to
the clock without pay and placed written reprimands in the emp
personnel files. Id. at 6. The Secretary of Labor (Secretary) then fil
in the United States District Court for the Northern District of Ohio, a
that Whirlpool's action constituted discrimination in violation of § 11(
the Occupational Safety and Health Act , 29 U.S.C. §§ 651-678 (th
Id. at 7. The Secretary's suit ended up at the Supreme Court on certi

The Court construed the Act and the Secretary's implementing regu
The relevant OSHA regulation considered by the Court states, in p(
part, exactly the same today:

(b)(1) [A] review of the Act and examination of the legislative
discloses that, *as a general matter, there is no right afforded by :*
*which would entitle employees to walk off the job because of p*
*unsafe conditions at the workplace.* Hazardous conditions which r
violative of the Act will ordinarily be corrected by the employer
brought to his attention. If corrections are not accomplished, or if t
dispute about the existence of a hazard, the employee will normall
opportunity to request inspection of the workplace pursuant to sect
of the Act, or to seek the assistance of other public agencies whic
responsibility in the field of safety and health. Under such circums
therefore, *an employer would not ordinarily be in violation of sectio*
*by taking action to discipline an employee for refusing to perform*

*job activities because of alleged safety or health hazards.*

*(2) However, occasions might arise when an employee is confronted choice between not performing assigned tasks or subjecting him serious injury or death arising from a hazardous condition at the wor If the employee, with no reasonable alternative, refuses in good expose himself to the dangerous condition, he would be protected subsequent discrimination. The condition causing the emp apprehension of death or injury must be of such a nature that a reas person, under the circumstances then confronting the employee, conclude that there is a real danger of death or serious injury a there is insufficient time, due to the urgency of the situation, to el the danger through resort to regular statutory enforcement chann addition, in such circumstances, the employee, where possible, mu have sought from his employer, and been unable to obtain, a corre the dangerous condition.*

29 C.F.R. § 1977.12 (emphasis added). Based on the legislati regulatory scheme, the Court thus concluded that an employe justifiably refuse to work in dangerous conditions if (1) the em reasonably believes the conditions pose an *imminent risk of de serious injury* and (2) the employee lacks sufficient time to seek from the employer or OSHA.[3] 445 U.S. at 10-11.

The Board previously held that no authority specifically requir application of the Whirlpool rule to federal employees. *Blocker*, 6 M at 469, *citing Parker v. Department of the Interior*, 4 M.S.P.R. (1980). This remains essentially true today because the enfor authority of the Act and OSHA is generally not applicable to the States. 29 U.S.C. § 652(5); *see* 29 U.S.C. § 668. The U.S. Postal S though, was made subject to the Act and OSHA enforcement in Postal Employees Safety Enhancement Act, 39 U.S.C. § 101 n U.S.C. § 652(5). Accordingly, the referenced OSHA regulation Whirlpool are authoritative in resolving this appeal.

For several reasons I now explain, I find that the appellant has f establish by preponderant evidence that he reasonably believed op the ALAM would create an imminent risk of death or serious p injury. Although his witness, Jerlean Scott, expressed a general c about moving parts causing injury, the appellant did not prese evidence of a risk of death or more than the mere possibility of inju Brant testimony, Scott Testimony, Appellant testimony. The ap essentially relied on the mantra "death or serious injury" and the de of "serious violation" in the OSHA regulation. HT, Appellant Testim C.F.R. § 1960.2(v); AF2, Tab 10, Subtabs 13-15, 17-19, 22.

I find it significant that the appellant clearly knew and understood the issues involved in operating the ALAM when he became a M Operator C in May 2001. He had participated as a union official wt agency created the "Level 5" Machine Operator position; he belie

national union disregarded safety concerns when the position was (
and that the Machine Operator C position should be higher grade
Appellant Testimony. When bidding on the position, he saw the p
description and qualification standards and was aware that clearing
jams on the ALAM was part of the Machine Operator C position.
also received approximately two months of on-the-job training in the
of 2001. Yet there is no evidence the union filed a safety grievance
operating the ALAM and the appellant personally did nothing signifi
address his alleged safety concerns until after confrontations w
supervisor that resulted in a 14-day suspension in June 2002. AF
10, Subtabs 15, 17, 19. The appellant did not grieve this suspe
Furthermore, the record shows that the appellant first raised the is
clearing jams in the context of the scope of his duties, not
essentially asserting that he should be paid as a higher-graded me
if he was required to clear jams. AF1, Tab 4, Subtabs 4a at 2, 4j at 7

The agency provided credible evidence that the ALAM was s
operate. The ALAM has been in operation for approximately seven
and there have been only two minor accidents, neither involving r
parts of the machine. AF1, Tab 4, Subtab 4a; HT, Worth Testimo
agency safety official had inspected the ALAM and found it s
operate. HT, Worth Testimony. Deciding official Worth was not aw
anyone other than the appellant refusing to operate the ALAM. HT,
Testimony. Further, there is no record evidence that mechanics ha
safety concerns regarding clearing jams. In addition, the agency
Machine Operators step-by-step instructions how to operate the
and clear jams, and the appellant acknowledged receiving approxi
two months of training when he began in the Machine Operator C p
in the spring of 2001. AF1, Tab 4, Subtab 4m at 4. HT, Brant Test
Appellant Testimony.

In the face of this evidence, the appellant vigorously asserts th
OSHA citation issued to the agency confirms his "reasonable beli
there was a substantial probability that death or serious injury could
from operating the ALAM."[4] AF2, Tab 11 at 4; HT, Appellant Test
Hearing Tapes, Appellant's Closing Statement. I do not find the iss
of the OSHA citation very persuasive in support of the appellant.
issued a safety citation after an inspection of the ALAM, citing the a
for "serious" violations consisting of inadequate lockout/tagout proc
(used to secure an energy source to prevent inadvertent startu
machine) and unguarded robotic arms. AF2, Tab 12, Subtab G.

The citation, though, is only a charge and "does not constitute a
that a violation of the Act has occurred." Id. at 1; 29 C.F.R. § 1903
Further, OSHA promptly compromised the citation, agreeing th
violations were "other-than-serious" or not "reasonably predicted to
death or serious physical harm." AF1, Tab 4, Subtab 4g; OSHA
Inspection Reference Manual CPL 2.103, Section 7-Chapter III, Insp
Documentation, C2a. Importantly, OSHA never identified the safety
an "imminent danger" or followed the procedures to abate su

imminent danger.[5] *See* 29 U.S.C. § 662; 29 C.F.R. § 1903.13. N
OSHA inform the agency that the ALAM was required to be shut
until safety issues were resolved. AF1, Tab 4, Subtab 4a; Tab 8, Sui
HT, Bryant Testimony, Appellant Testimony. Finally, the appellant
become aware of the OSHA citation until June 29, 2002, after t
committed the misconduct charged by the agency. HT, Ap
Testimony. The OSHA citation therefore provides the appellant little

Accordingly, the appellant's evidence falls far short of establishing t
a reasonable belief of imminent death or serious physical injury wt
failed to follow his supervisor's instructions.[6]

### The appellant failed to prove by preponderant evidence his cla retaliation for protected EEO activities.

The appellant claims that the agency removed him in retaliation
prior protected EEO activities. For an appellant to prevail on a cl
illegal retaliation, he has the burden of showing that: (1) He enga
protected activity; (2) the accused official knew of the protected activ
the adverse action under review could have been retaliation und
circumstances; and (4) there was a genuine nexus between the a
retaliation and the adverse action. *Jefferson v. U.S.Postal Servi*
M.S.P.R. 607, 610 (1999) (*citing Warren v. Department of the Arm*
F.2d 654, 656-58 (Fed. Cir. 1986)). In determining whether the ap
has established a nexus between the alleged retaliation and the a
action, the Board must weigh the intensity of the motive to retaliate a
the gravity of the misconduct. *Id.* The proper perspective fc
determination is the gravity of the misconduct as it appeared
deciding official at the time he took the action. *Jefferson*, 81 M.S.f
612.

The appellant presented virtually no evidence to support his cl
retaliation, merely eliciting from Worth that he was aware the ap
had been engaged in protected EEO activities. HT, Worth Testimon
appellant essentially relies on the argument that the "irrationality"
agency's removal action justifies a finding of retaliation. Hearing
Appellant's Closing Argument. The appellant, however, did not all
show why Worth had a significant motive to retaliate against the ap
for this prior EEO activity. Also, the agency has established t
removal action was based on serious misconduct. I thus find the ap
has failed to establish a genuine nexus between the alleged retaliati
the agency's removal action.

### The penalty of removal is reasonable for the sustained charge promotes the efficiency of the service.

An agency may take an action against an employee under 5
Chapter 75 only for such cause as will promote the efficiency
service. *See, e.g., Hatfield v. Department of the Interior*, 28 M.S.P.f
675 (1985). An adverse action promotes the efficiency of the s

satisfying the nexus requirement, where the grounds for the action r
either the employee's ability to accomplish his duties satisfactoril
some other legitimate government interest. *Fontes v.Departm*
*Transportation*, 51 M.S.P.R. 655, 665 n.7 (1991). The nexus require
met here.

Penalty determinations are judgment calls within the discretion
employing agency. *LaChance v. Devall*, 178 F.3d 1246, 1251 (Fe
1999). The Board may not independently determine penalties. *Id.* a
Rather, in a case such as this when all of the charges against an ar
are sustained, the Board reviews the penalty selection to det
whether it is so excessive as to be an abuse of discretion or is otl
arbitrary, capricious, or unreasonable. *Douglas*, 5 M.S.P.R. at 302.
cases, the Board will review an agency-imposed penalty to determir
agency conscientiously considered all of the relevant mitigating facto
exercised management discretion within tolerable limits of reasonab
*Id.* at 306.

In conducting its review, the Board will weigh these factors w
agency's discretionary authority to carry out its managerial funct
maintaining employee discipline and overall efficiency. *Id.* at 30
Board's function in this regard is not to displace manage
responsibility, but to assure that managerial judgment has been p
exercised. *Id.* Thus, the Board will modify a penalty only when it fin
the agency failed to weigh the relevant factors or that the ag
judgment clearly exceeded the bounds of reasonableness. *H)*
*Department of the Air Force*, 85 M.S.P.R. 145, 153 (2000).

The agency has shown that the appellant's misconduct was serious
intentional, repeated, and disruptive to the workplace. The appella
provided an opportunity to correct his misconduct, and was suspen
virtually the same offense as charged in his removal. Even after his
safety concerns and the OSHA citation were resolved by the age
continued to refuse to work on the ALAM or accept refresher t
Although the appellant has a long employment history with the ager
seriousness of the offense and his extensive disciplinary record c
14-day suspensions, one 7-day suspension and a letter of v
outweigh his lengthy service. In conclusion, the record shows tl
deciding official considered the appropriate Douglas factors, and l 1
penalty of removal does not exceed the bounds of reasonableness
case.

## Decision

The agency's action is AFFIRMED.

[1]At the appellant's request, on December 9, 2002, I dismissed the
appeal without prejudice to refiling. AF1, Tab 22. The appe
automatically refiled on January 14, 2003, and assigned MSPB Doc
DC-0752-02-0771-I-2. AF2, Tab 2.

[2]In his prehearing submissions and during the prehearing conferen appellant asserts the agency must prove that "OSHA found the ALA to operate on June 25, 2002" in order to sustain its charge. AF2, Tab 13 at 2-3. I ruled at the prehearing conference that the agenc not prove the OSHA factual allegations found in the narrative of its of proposed removal to sustain the charge of failure to follow instru AF2, Tab 13 at 2-3. Where more than one event or factual speci supports a single charge, proof of one or more, but not all, supporting specifications is sufficient to sustain the charge. Burroi *Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990). An ag required to prove only the essence of its charge, and need not prov factual specification supporting the charge. Hicks v. *Department Treasury*, 62 M.S.P.R. 71, 74 (1994), aff'd, 48 F.3d 1235 (Fed. Cir (Table); see Otero v. *U.S.Postal Service*,73 M.S.P.R. 198, 204 OSHA's alleged findings, though, are correctly addressed considering the appellant's "safety" affirmative defense.

[3]The Court also described the express statutory mechanism, in injunctive relief, available if OSHA determines that the wo conditions or practices create such an imminent risk. 445 U.S. at 8- 29 U.S.C. § 662. "[I]mminent risk" exists if workplace conditi practices could reasonably be expected to cause death or serious p harm immediately or before the imminence of such danger c eliminated through the ordinary enforcement procedures found in t See 29 C.F.R. §§ 1903.13, 1960.2(u).

[4]This is essentially OSHA's definition of "serious". 29 C.F.R. § 1960.

[5]At the hearing, the appellant testified for the first time that the inspector privately stated to him that this was an "imminent danger' HT, Appellant Testimony. I find the appellant's testimony incredible point. The appellant clearly had many opportunities, including in re to his proposed removal or at his deposition, to relate the inspector's alleged comments to agency officials. I find it highly that the appellant waited over 8 months to mention the OSHA insp comments for the first time at the hearing, especially consideri detailed record of the inspector's comments kept by the agency, the citation's failure to mention imminent danger, and the significance OSHA allegation of imminent danger.

[6]Even if I were to find that the appellant had a reasonable b imminent death or serious injury, I would also find that he had su time to seek redress from the agency or OSHA. 445 U.S. at 10-11. regard, the appellant had a significant amount of time to resolve th between starting the Machine Operator C position in May 2001 a confrontations with the agency in June 2002. The appellant also ho deciding official Worth shut down the ALAM when he was informed the OSHA citation. The appellant asserts that he was justified in fa work on the ALAM because Worth testified it was "not unreasonable

employee to believe a condition was "unsafe" if OSHA described
serious. Hearing Tapes, Appellant's Closing Statement; HT,
Testimony. Worth, though, did not testify that he believed there v
"imminent risk" of death or serious physical injury. In any ev
determine the facts de novo in this appeal. *See Jackson v. Ve
Administration*, 768 F.2d 1325, 1329 (Fed. Cir. 1985).



Online Store    Contact Us    About LRP Publications    License Agreement    Advanced Search    Email Webmaster

Back to top

Copyright 2005 © LRP Publications