UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
FIFTH REGION

UNITED STATES POSTAL SERVICE
(EASTERN AREA SUPPLY CENTER,
WESTERN AREA SUPPLY CENTER,
MAIL BAG DEPOSITORIES AND
REPAIR CENTERS, AND MAIL
EQUIPMENT SHOPS)

        Employer

and

AMERICAN POSTAL WORKERS UNION,
AFL-CIO; NATIONAL POST OFFICE
MAIL HANDLERS, WATCHMEN, MESSENGERS,
AND GROUP LEADERS, DIVISION OF
LABORERS' INTERNATIONAL UNION
OF NORTH AMERICA, AFL-CIO

        Joint Petitioners

Cases Nos. 5-RC-8575(P)
(Formerly 22-RC-5127(P))

5-RC-8576(P)
(Formerly 22-RC-5129(P))

UNITED STATES POSTAL SERVICE
(MAIL EQUIPMENT SHOPS)

        Employer

and

NATIONAL ALLIANCE OF POSTAL
AND FEDERAL EMPLOYEES

        Petitioner

Case No. 5-RC-8577(P)
(Formerly 22-RC-5136(P))

## SECOND SUPPLEMENTAL DECISION
## AND
## CERTIFICATION OF REPRESENTATIVE

Pursuant to a Supplemental Decision, Order, and Direction of Second Election [1] issued by the Regional Director on August 10, 1973, a secret-ballot election was conducted under his supervision on September 13, 1973, with the following results:

| | |
|---|---:|
| Approximate number of eligible voters | 193 |
| Void ballots | 0 |
| Votes cast for National Alliance of Postal and Federal Employees | 76 |
| Votes cast for American Postal Workers Union, AFL-CIO; National Post Office Mail Handlers, Watchmen, Messengers, and Group Leaders, Division of Laborers' International Union of North America, AFL-CIO | 91 |
| Votes cast against participating labor organizations | 3 |
| Valid votes counted | 170 |
| Challenged ballots | 0 |
| Valid votes counted plus challenged ballots | 170 |

---

[1] The unit is: "All employees at the Employer's Mail Equipment Shops in Washington, D. C., including all plant clerical employees, but excluding the tool-and-die shop employees, the engineering technicians and draftsmen, office clerical employees, professional employees, confidential employees, guards, managerial employees, and supervisors as defined in the National Labor Relations Act, as amended, and the Postal Reorganization Act of 1970." The eligibility period is the payroll period for the week ending August 3, 1973.

Timely objections to conduct affecting the results of the election were filed by National Alliance of Postal and Federal Employees, herein referred to as the Alliance, on September 19, 1973. 2/

The undersigned has caused an investigation to be made, has carefully considered the results thereof and finds as follows:

Objection No. 1

> On September 7, Supervisor Wycott prohibited National Alliance representative Freddie Price from distributing plastic bags with name of National Alliance affixed. However, on the date in question, Charles F. Wilson, representative for the APWU was allowed to solicit or electioneer on government premises during working hours. The matter of electioneering was brought to the attention of Supervisor Wycott by Freddie Price, pointing out that he and other workers had observed Mr. Wilson electioneering from 2:45 p.m. to 3:25 p.m. and from 3:30 to 3:45 p.m. Mr. Wycott said, so long as he isn't passing out material, it's o.k. Mr. Price asked if he could solicit for the Alliance on the clock. Mr. Wycott replied, No.

In support of this objection the Alliance produced evidence that on Friday, September 7, 1973, an employee supporter of the Alliance, Freddie Price, at about 10:00 a.m. was handed several plastic shopping bags by officials of the Alliance which bore the Alliance's name. After Price returned from a break several employees requested and received these bags near Price's work station. This was noticed by Price's supervisor, Wycott, who requested Price not to distribute the bags while "on the clock". Price complied with this request. Later that afternoon Price observed employee, Charlie Wilson, who is alleged to be a supporter of a competing union, American Postal Workers Union, AFL-CIO, herein referred to as APWU, talking to fellow employees for what Price considered to be an inordinate amount of time, approximately 40 minutes. Although Price did not overhear any of the conversations, he suspected they constituted electioneering on work time. Later that afternoon Price complained to Wycott about Wilson's actions and asked why he, Price, had been prohibited from distributing the Alliance shopping bags while "on the clock". After investigation Wycott advised Price that Wilson was not engaging in any distributions and that he could not be prohibited from talking to fellow employees. The Alliance has submitted no additional evidence that since April 19, 1973, officials or supporters of APWU were granted any privileges to distribute or electioneer which were not accorded the Alliance.

---

2/ The undersigned will consider on its merits only that alleged interference which occurred during the period between the first election and the rerun election. The period begins at the closing of the polls at 9:30 a.m., April 19, 1973, and ends with the closing of the polls at 9:30 a.m., September 13, 1973. The Singer Company, Wood Products Division, 161 NLRB 956, fn. 2. All conduct alleged herein falls within the above period. (Cont'd.)

- 2 -

As the Alliance produced no evidence that Wilson was engaged in electioneering while talking to employees, it cannot be concluded that the Employer accorded disparate treatment to the APWU during the pre-election period. Accordingly Objection No. 1 is overruled in its entirety.

Objection No. 2

> Unilaterally posting on the bulletin board on September 10, 1973 minutes of a labor-management meeting held on September 5, 1973, without granting the National Alliance the opportunity to review or approve prior to posting. This unilateral action by management demeans the National Alliance in the eyes of unit employees prior to the election.

The Alliance and the Employer are parties to a collective-bargaining agreement for a unit substantially similar to the unit herein. However, the contract is not a bar to an election. Pursuant to Article XXI of the contract, union-management meetings are held between the Alliance and the Employer on the first Wednesday of each month, if requested by the Alliance. In February 1973, the Employer unilaterally discontinued the practice of meeting with the Alliance upon the latter's request. This action was in part the basis for one of the Alliance's objections filed to the first election conducted on April 19, 1973, which election was set aside. Thereafter, the parties on September 5, 1973, held a union-management meeting. The Alliance was represented by Tommie L. Wilson, president of a branch of the Alliance but not an employee of the Employer, and chief steward Jon Hill, and steward Marian Freeman, both employees of the Employer. In accord with past practice the minutes of the meeting were taken and prepared by the Employer.

Alliance witness Tommie L. Wilson alleges that in the past, after the Employer prepared the minutes of each union-management meeting, a representative of the Alliance was permitted to verify the contents prior to its being posted so that any disagreement could be resolved or noted thereon. Alliance approval would be noted by the signature of an Alliance representative on the minutes. Wilson also alleges that contrary to prior practice the minutes of the September 5, 1973, meeting were posted without having been read or approved by the Alliance.

The Employer states that the practice was for it to prepare the minutes and then show them to a designated representative of the Alliance in the Mail Equipment shops for review prior to posting. If the Alliance objected to the contents an attempt would be made to resolve the problem by making changes in the

---

2/ (Cont'd)
The objections are identical with the unfair labor practice allegations in Case No. 5-CA-6310(P) filed by the Alliance on September 11, 1973. By letter dated October 31, 1973, the Regional Director advised the Alliance that he was refusing to issue complaint in that case.

- 3 -

text. However, if the objection could not be resolved the Alliance's specific objections would be noted on the minutes. In the absence of objections there was no firm practice for an Alliance representative to affix his signature. Mail Equipment Shops Manager George Critzer states and Wilson agrees that at the conclusion of the September 5, 1973, meeting the Employer was advised that Jon Hill would review the minutes on behalf of the Alliance. Critzer states further that on September 10, 1973, when the minutes consisting of three pages were ready for review, they were presented to Jon Hill. It is undisputed that although Hill did not have any objections to the contents of the minutes he refused to sign them as he had been instructed not to sign them. When this was brought to Critzer's attention he spoke with Hill who admitted that he had no objections to the contents. However, pursuant to his instructions, he would not sign them. Critzer told Hill that it was not necessary that the minutes be signed and posted them that afternoon.

    Hill states that although he had been designated by the Alliance to review the minutes he had been instructed to advise the Employer that he could not sign them until they were reviewed by a higher level official of the Alliance. When presented on September 10, 1973, with the minutes for review, he refused to sign and requested permission to present them to a higher level official of the Alliance for approval.

    As of the present date the Alliance has not presented any evidence that the posted minutes did not accurately reflect what transpired at the September 5, 1973, meeting. Moreover, on September 7, 1973, three days prior to the Employer's posting of the minutes, the Alliance mailed to all employees on the election eligibility list its version as to the events of the September 5, 1973, meeting. A review of the minutes posted for the approximately 18 meetings held during the period March 1970 through October 1972,[3]/ reflects that 11 lack the signature of an Alliance official or representative; 5 bear the signature of an employee representative of the Alliance other than Hill; one bears the notation it had been seen by the Alliance and another lacking a signature notes that the Alliance objected to a specific portion. Moreover, for the last 7 meetings, beginning with December 1971, the minutes were all posted without any Alliance signature, without any objection being noted, and without indicating they had been seen by the Alliance.

---

[3]/ The last meeting prior to the September 5, 1973, meeting.

- 4 -

Based upon the foregoing, it cannot be concluded that the Alliance was not afforded an opportunity to review or approve the minutes prior to their being posted. Furthermore, the evidence does not establish that the posting of the September 5, 1973, minutes without said minutes bearing a signature or other mode of approval by the Alliance "/demeaned/ the National Alliance in the eyes of the unit employees prior to the election." Moreover, the evidence is clear that recently minutes were posted without any indication that the Alliance had approved them. Accordingly, the Alliance's Objection No. 2 is overruled in its entirety.

Objection No. 3

> Pre-election inflammatory statement: Mrs. Terry, a nurse (white) has related to numerous employees in the unit, if the black union wins, the mail equipment shops will be closed. The aforesaid is an overt and blatant appeal to racial prejudice.

An Alliance witness states that during the week of September 3, 1973, he went to the nurse's office. While there, Nurse Mildred Terry, who is white, first inquired if he was going to vote and after receiving an affirmative response inquired how he was going to vote. After the witness expressed his support of the Alliance, Terry said she had heard from a reliable source that if the "black union", (the Alliance) won the Mail Equipment Shops would be closed. The witness further states that during the week of September 10, 1973, Terry inquired if he had decided to change his vote. No evidence has been submitted by the Alliance reflecting that Terry is a supervisor or agent of the Employer.

Terry admits speaking to the witness but denies making any reference to the "black union". She states she referred to the union as the Alliance. She attributes the source of her information about the closing to the "grape vine" and denies that any one connected with management said anything suggesting or supporting this rumor. Terry did not vote in the election, apparently having been excluded on the basis of her professional status. Moreover, she is the Employer's sole nurse and possesses none of the indicia of supervisory authority.

Assuming *arguendo* that Terry referred to the Alliance as the "black union" which the Alliance contends is "an overt and blatant appeal to racial prejudice", such comment made by an employee who is not a supervisor or agent of the Employer, cannot be imputed to the Employer. Moreover, although alleged to have been made to more than one employee, the Alliance produced no evidence of wider dissemination. Thus, the remark, if made, although not condoned is isolated and is insufficient to warrant setting aside the election. Accordingly, Objection No. 3 is overruled in its entirety.

In summary, the undersigned overrules the Alliance's objections in their entirety and will issue an appropriate certification of representative.

### CERTIFICATION OF REPRESENTATIVE

IT IS HEREBY CERTIFIED that American Postal Workers Union, AFL-CIO; National Post Office Mail Handlers, Watchmen, Messengers, and Group Leaders, Division of Laborers' International Union of North America, AFL-CIO, has been designated and selected by a majority of the employees of the above-named employer in the unit involved herein as their representative for purposes of collective bargaining, and that pursuant to Section 9(a) of the National Labor Relations Act, as amended, and Chapter 12 of the Postal Reorganization Act, the said organizations are jointly the exclusive representative of all the employees in such unit for the purposes of collective bargaining with respect to rates of pay, wages, hours of employment and other conditions of employment.

Dated at Baltimore, Maryland, this 7th day of November, 1973.

(SEAL)

SIDNEY SMITH

Sidney Smith, Acting Regional Director
National Labor Relations Board, Region 5
1019 Federal Building, Charles Center
Baltimore, Maryland 21201