

# *Annual Report to the Board of Governors*

## PURCHASING AND MATERIALS

### *FISCAL YEAR 1997*

# Part I Overview

## Introduction

Purchasing and Materials is an enabling organization whose role is to purchase and manage the goods and services our internal customers need to collect, process, and deliver America's mail. We are an organization dedicated to customer satisfaction and continuous improvement in meeting these responsibilities. During the past year, Purchasing and Materials has made significant strides, and the following report will describe the recent, important achievements we have made, efforts currently underway to further improve, and our future challenges and plans.

## Mission

The Mission of Purchasing and Materials is to satisfy the needs of our customers by effectively and efficiently buying, supplying, and delivering equipment, facilities, and services. This is accomplished by a trained, professional workforce operating under forward-thinking policies and procedures that combine the best in public and private in both the purchasing and materials management disciplines. As an enabling organization, Purchasing and Materials also furthers corporate goals by adding value through our knowledge of the marketplace, our supplier relationships, and our ability to reduce operating cost.

## Vision

"To become the business partner of choice for our internal customers and our suppliers." Since 1987, Purchasing and Materials has instituted continuous improvement as a bottom-line operating philosophy. During that year, a comprehensive Plan for Improvement was launched, and it brought top-to-bottom improvement throughout the organization. Furthering this philosophy, Purchasing and Materials last year introduced a Strategic Plan for 1997-2000 and beyond. The Plan, which we will discuss in more detail below, is built around the corporate strategic planning framework embodied in *CustomerPerfect!sm*. The Plan requires that each component organization in Purchasing and Materials establish annual goals and a program of initiatives to achieve the broader aspects of the Plan. We have made significant progress in these efforts, and we will address these in Part II of this report. For now, however, the net result is that Purchasing and Materials is becoming more and more that business partner of choice described in our vision statement below.



**PURCHASING AND MATERIALS' VISION**

**"To grow from a transaction-oriented organization into an active business partner of choice for our customers and suppliers."**

Other examples of successful supply chain management include coordinating purchasing and inventory management efforts and buying and supplying via long-term contracts, direct vendor delivery, EDI, and more flexible ordering. This initiative offers significant improvement in Purchasing and Materials' communications and coordination with other corporate organizations, and will go far in establishing much more successful business partnerships with our customers and suppliers.

In terms of overall numbers, the Postal Service awarded more than 54,000 contracts worth more than $9.7 billion during fiscal year 1997. This is the highest annual dollar total in Postal Service history, and illustrates growing corporate requirements and Purchasing and Materials' increasing financial and operational responsibilities. Some of the most notable among these were a $1.7 billion contract with Emery (the single largest in our history) for the establishment of the Priority Mail network, two multi-million dollar mail transportation contracts (one worth $162 million to United Airlines, and the other worth $160 million and awarded to Delta Airlines), a $218 million contract to Lockheed Martin for the Mobil Data Collection Devices, and a $43.8 million contract for the construction of the Minneapolis Information Service Center.

## Initiative - Cultivate Supplier Relationships

One of the most important concepts of our new purchasing policies is establishing mutually open, beneficial, and cordial supplier relationships. Traditionally, these relationships were often antagonistic; the new policies call for teamwork and partnerships between the Postal Service and our suppliers. During the past year, efforts to achieve this transformation includes the establishment of a Supplier Quality Council and cost reduction teams formed with key suppliers. Additionally, long-term contracts with particularly capable suppliers have been awarded, and, in order to foster better understanding of Postal Service needs and suppliers' capabilities, suppliers and industry frequently review (and make recommendations regarding) our requirements before they are issued in solicitations. To similarly improve relations, Alternate Dispute Resolution (ADR) methods are now encouraged in lieu of the traditionally hostile--and costly--claim and dispute process. Purchasing and Materials has teamed with the Law Department to promote these methods and to train our buyers, and these efforts are having an effect. For example, using ADR, Lockheed Martin and the Postal Service settled a $27 million contract dispute that had been scheduled for litigation. The entire process took less than 2 weeks, and the settlement amount was $7 million. Partnerships are also being established. The Postal Service and the Associated General Contractors of America signed a partnership agreement containing shared goals and objectives for the construction of postal buildings throughout the nation. We are also working with our highway mail transportation suppliers to identify more cost effective ways to purchase the fuel required by this supplier community to move the mail. And, in support of all of these efforts, suppliers have been surveyed and purchasing managers have identified and implemented improvement strategies based on the survey findings.

## Initiative - Promote Supplier Diversity

During the past year, Purchasing and Materials took several important steps to maintain and improve our traditional commitment to small, minority, and woman-owned businesses. Primary among these was the issuance of our first 5-year Supplier Diversity Operating Plan. The plan contains specific programs and responsibilities designed to ensure and further our commitment, and our new policies specifically mandate contracting officers to manage supplier diversity as one of the Postal Service's most important strategic initiatives. Purchasing personnel and their managers must establish and maintain a supplier base that reflects the diversity of the American supplier community, and performance appraisals will consider efforts made in this area. Success will be measured against both private-sector communications companies and federal agencies whose purchasing needs resemble our own. The plan also calls for added emphasis on planning for including small, minority

and woman-owned businesses as both prime and subcontractors, increased training in supplier diversity, and proactive sourcing to locate these entrepreneurs. As the Board will remember, the plan was recently singled out for its comprehensiveness and scope, and it provides the road map whereby our supplier diversity efforts will be judged.

During fiscal year 1997, Postal Service requirements, especially those for large capital investments or major programs, combined with our continued focus on transferring transaction volume to more efficient buying methods (like credit cards), shifted supplier diversity results more toward large businesses. Nevertheless, more than 50 percent of last year's contractual actions (worth more than $2.5 billion) went to small businesses. Results for minority and woman-owned businesses were mixed. Although we awarded more than $234 million to minority businesses in fiscal year 1997, this was $32.7 million less than the previous year. However, contracting with woman-owned businesses increased to $402 million, $78 million more than was awarded to these entrepreneurs in fiscal year 1996.

In addition to those discussed above, we are taking further actions to improve our supplier diversity performance. Purchasing and Materials has established a new Supplier Development and Diversity organization to leverage existing resources and supplier outreach, development, and management. This new organization will focus on both overall supplier relations and on supplier diversity, and will pursue the sorts of efforts that led to our business relationship agreement with the U.S. Hispanic Chamber of Commerce, under which the Postal Service and the Chamber share information on business opportunities and potential suppliers, and sponsor and participate in joint activities.

**Initiative - Adjust Structure and Staffing**

In an effort to balance out organizational needs within Purchasing and Materials, the leadership of the department developed a vacancy reallocation method. As vacancies occur, the responsible manager prepares business cases, defines reasonable alternatives, and presents the relevant findings to the Purchasing and Materials Leadership Team. As a result, several positions were reallocated to other areas, others were adjusted to cover more pressing needs, and positions were added where appropriate. For example, Headquarters Purchasing received almost 20 new positions to cover long-term automation needs and other significant contracting programs, and a new PCES executive position was added due to the expanding role of contract pricing, including new transportation and facilities pricing requirements.

United States General Accounting Office

# GAO

Report to Congressional Requesters

September 1994

# U.S. POSTAL SERVICE

# Labor-Management Problems Persist on the Workroom Floor

Chapter 1
Introduction

predicated any wage increase on congressional approval of the reorganization bill. The postal unions wanted a pay raise for their members but uniformly opposed radical postal reorganization. All attempts at compromise failed, and on March 18, 1970, city letter carriers voted to strike in New York City. The walkout quickly spread to other cities, affecting more than 600 post offices nationwide. By the end of the 9-day strike, over 200,000 workers were off the job.

## The Postal Reorganization Act of 1970

Following the strike, Congress passed the Postal Reorganization Act in August 1970, establishing the Postal Service as an independent governmental establishment with a mandate to provide prompt, reliable, and efficient mail services to all areas of the country. Congress envisioned that it would be self-sustaining by 1985. The act brought postal labor relations within a structure similar to that applicable to companies in the private sector.[2] Collective bargaining for wages and working conditions was authorized, subject to regulation by the National Labor Relations Board. A negotiated grievance procedure, including binding arbitration, was also authorized to resolve employee and union grievances.[3]

However, Congress included several key provisions differentiating postal labor relations from those in the private sector:

- Postal employees could not be compelled to join or pay dues to the union.[4]
- Strikes were prohibited.[5]
- In lieu of the right to strike, binding (compulsory) arbitration was established to resolve bargaining deadlocks.[6]
- Wages comparable to those of workers in the private sector were mandated.[7]

---

[2] Public Law 91-375, 39 U.S.C. 1001 et seq.

[3] 39 U.S.C. 1206.

[4] 39 U.S.C. 1204, 1205.

[5] 39 U.S.C. 410 provides for the application of other laws to the Postal Service. This includes 5 U.S.C. 7311, which prohibits federal employees from striking.

[6] 39 U.S.C. 1207.

[7] 39 U.S.C. 1003.

meet customers' needs and expectations. Nor has it helped employees to feel very good overall about their working conditions, as we will show in chapters 3, 4, and 5.

## Postal Service Strategies for Changing the Corporate Culture

Shortly after taking office in July 1992, Postmaster General Runyon said that a change in the corporate culture is needed if the Postal Service is to succeed in today's competitive communications market and become a world-class organization. The change he is seeking is a transformation from an "operation driven, cost driven, authoritarian, and risk averse" culture to one that is "success-oriented, people oriented, and customer driven." According to Mr. Runyon, management, unions, and employees all need to work together to improve relationships and organizational performance, so the Postal Service as a whole can focus on meeting customers' needs.

The Postal Service's strategies for changing the corporate culture have centered on (1) restructuring the organization, (2) establishing a National Leadership Team that includes all Postal Service officers and the national presidents of the unions and management associations, and (3) changing the incentive systems for rewarding managers.

## Restructuring the Postal Service

One of the first actions taken by Postmaster General Runyon was a top-down restructuring and downsizing of the Postal Service. This was undertaken to deal with a $2.2 billion deficit projected in fiscal year 1993[5] and was part of Mr. Runyon's broader strategy to make the Postal Service more accountable, credible, and "competitive." The restructuring, which was largely carried out over a 120-day period between August and November 1992, was the most sweeping reorganization since the Postal Reorganization Act of 1970. It realigned resources into two functions—mail processing and distribution and customer service. The goal was also to make the organization flatter and reduce layers of management by eliminating 30,000 positions.[6] To make the overhead

---

[5]Due to the restructuring efforts, major cost savings initiatives, and a resurgence in revenue growth from an improving economy, the Postal Service ended the fiscal year with a $371 million operating loss. However, the total net loss was substantially higher ($1.8 billion) due to an $857 million retroactive interest assessment imposed by the Omnibus Budget and Reconciliation Act of 1993 and a debt refinancing item of $537 million incurred in fiscal year 1993.

[6]In June 1994, the Merit Systems Protection Board (MSPB) ruled that the restructuring violated the rights of middle managers with veterans preference by demoting them and eliminating their jobs without following reduction-in-force regulations. In August 1994, Postmaster General Runyon announced that the Postal Service would drop its appeal of the MSPB ruling.

# GAO

United States General Accounting Office

Report to the Chairman, Subcommittee on the Postal Service, Committee on Government Reform and Oversight House of Representatives

October 1997

# U.S. POSTAL SERVICE

# Little Progress Made in Addressing Persistent Labor-Management Problems



B-272446

system of management. However, the president said that due to the enormous resources that the Service has devoted to the implementation of the Delivery Redesign initiative, it has been unable to provide much assistance to the Rural Carriers union in developing any type of performance pay system in addition to the one that the rural carriers already have. The Rural Carriers president also stated that it is the individual employee who drives customer satisfaction, creates revenue, and increases productivity. As such, he believes that the performance of rural carriers in these areas is already aligned with the concepts of EVA.

As previously mentioned, in his comments, the president of the League expressed his concern that less than a majority of postmasters were included under EVA, which caused the League not to support the new pay system. Also, he commented that (1) nonexempt postmasters who receive additional pay for working over 40 hours per week should not be excluded from eligibility for EVA bonuses, because such pay is due these postmasters for additional work and should not be considered a bonus; and (2) when trying to support new programs, such as EVA, the Postal Service has often used the private sector as a basis for comparing the work of postal employees to employees doing similar work in the private sector. However, the League president stated that because the Postal Service is not a private business, the Service should recognize that many postal positions are unique and cannot be compared to positions in the private sector. The president of NAPS told us that he believed some postmasters were overpaid for the work that they did, which included work that oftentimes was done by craft employees, particularly clerks, such as sorting mail and providing over-the-counter products and services to postal customers.

## CustomerPerfect!

In February 1995, the Service implemented *CustomerPerfect!*, which has been described by the Vice President for Quality as a "management system being constructed and operated by the Postal Service as a vehicle for constructive change." He told us that *CustomerPerfect!* is designed to assess and, where necessary, improve all aspects of Service operations so that it can better provide postal products and services to its customers in a competitive environment.

Postal officials told us that in fiscal year 1995, two *CustomerPerfect!* pilots were established in Washington, D.C., and Nashville, TN. Later, in

B-272446

February 1996, eight additional pilot sites were added.[17] A postal official mentioned that these pilots consisted primarily of implementing what the Service called process management, which was described as a systematic approach to continuously assessing, evaluating, and improving the design and management of core work processes, including those that facilitate the processing and delivery of mail products and services to postal customers. A key aspect of this approach involves the collection and use of various service and financial performance data, such as EXFC; EVA; and data on safety in the workplace, including postal vehicle accidents. A postal official mentioned that the Service plans to expand the process management aspect of *CustomerPerfect!* to all 85 postal performance clusters in fiscal year 1997.[18]

According to postal officials, *CustomerPerfect!* was not specifically designed to address labor-management relations problems. However, they believe it provides an opportunity for management and craft employees to work together on problem-solving teams to improve how the Service accomplishes its overall mission. Postal officials told us that they believed they had good representation from craft employees on several problem-solving teams that have been established. They further stated that all improvement initiatives should be aligned with *CustomerPerfect!*

According to a postal official, in 1995, the Service offered to provide a briefing on the goals of *CustomerPerfect!* to the four unions and the three management associations. According to a postal official, representatives from two of the four unions—APWU and Rural Carriers—attended the briefing. The postal official told us that Mail Handlers and NALC representatives declined to attend the briefing. Mail Handlers' officials told us that they had no interest in the briefing, mainly because the Service had already made the decision to implement *CustomerPerfect!* and did not solicit the union's input into the development of *CustomerPerfect!* NALC officials did not identify a specific reason for not attending the *CustomerPerfect!* briefing. However, they told us that the Service unilaterally terminated the joint Service-NALC improvement initiative called

---

[17]The locations of the 10 *CustomerPerfect!* pilots included the following district offices: (1) the Capital District, Washington, D.C.; (2) the Central Plains District, Omaha, NE; (3) the Connecticut District, Hartford, CT; (4) the Greater Indiana District, Indianapolis, IN; (5) the Harrisburg District, Harrisburg, PA; (6) the Louisiana District, New Orleans, LA; (7) the New York District, New York, NY; (8) the Sacramento District, Sacramento, CA; (9) the Seattle District, Seattle, WA; and (10) the Tennessee District, Nashville, TN.

[18]A performance cluster is an organizational mechanism used by the Service to help track performance data. For each of the Service's 85 districts, a cluster usually consists of (1) a district office, which is responsible for customer service functions mainly through its post offices, stations, and branches; and (2) a large mail processing and distribution center/facility, which is responsible for processing and distributing mail mainly through other such centers/facilities, bulk mail centers, and airport mail centers/facilities.

1431 Roxanna Road, N.W.
Washington, DC  20012-1225
202-722-0314

July 7, 2003

**PRIVILEGED & CONFIDENTIAL**

Ross T. Dicker, Esq.
Office of Bar Counsel
515 Fifth Street, N.W., Rm. 127
Washington, DC  20001

Re:  **Harris/Steele**

Dear Mr. Dicker:

I have received your June 17, 2003 correspondence regarding the above-referenced matter. I respond thereto as follows.

During 1997 and 1998, Michael C. Watson, Esq., and I advised Wilbert Harris concerning a number of matters affecting the Mail Equipment Shop Union ("Union"). Notably, while spending hours of valuable time conferring with Harris, we did not receive any immediate compensation for this advice.

The situation came to a head in 1998. As you may be aware, Harris, worked at the Mail Equipment Shops ("MES"), the postal service's manufacturing division, for over twenty-five years without any disciplinary incident of consequence. For more than ten years, he served as a representative of the MES Local Union. In 1998, he ascended to the presidency position in the Union.

On July 1, 1998, as an apparent result Harris' whistle-blowing regarding the misappropriation of union funds, Trina Johnson, the former union treasurer, her husband and one of their compatriots conspired to assault Harris after work outside of the workplace. In advance of the attack, Harris suspected that Johnson had "placed a hit out" for him. He duly informed his concerns to Lavillian G. Griffin, his immediate supervisor. While Harris contacted Griffin pursuant to the MES anti-violence policy, Griffin blithely ignored her corresponding obligation to contact the plant manager.

Harris' suspicions came to fruition at the end of the workday. At approximately 4:35 p.m., Harris walked out of the employee entrance and waited for a ride home. Within minutes, Ronald Johnson and an unidentified man approached him. After a heated verbal exchange concerning Harris' allegations regarding his

Ross T. Dicker, Esq.
July 7, 2003
Page 2

wife's misappropriation of union funds, Ronald Johnson struck
Harris in the jaw. According to Harris, he initially prepared to
box Johnson. However, both Johnson and his accomplice then raised
their fists in a threatening manner. In fear of bodily injury or
death when both men approached him in this aggressive fashion,
Harris pulled a "box cutter" out of his smock,[1] raised it over his
head with his right hand, and stretched out his left hand in a
"stop" motion. Johnson and his colleague momentarily retreated.
Other employees then intervened between Harris, Johnson and his
colleague.

        The Postal Service proceeded to terminate Harris,
contending, in essence, (1) Harris committed violence by utilizing
the box cutter to defend himself against these two attackers and
(2) he failed to notify the police of his fear of assault in
advance of the attack.

        In response thereto, my office mounted a two-tier attack
to challenge his discharge. First, we initiated an administrative
claim with the United States Postal Service Equal Employment
Opportunity Office ("EEO") under Title VII of the Civil Rights Act.
We subsequently commenced an action with the Merit System
Protection Board ("MSPB") under the Civil Service Reform Act
("CSRA").

        In rejecting Postal Service's arguments supporting
Harris' discharge, MSPB Administrative Judge William C. Jenkins
found, in pertinent part:

        Based on his limited use of the box cutter and the
        evidence establishing that this use was in response to
        the unprovoked attack of Mr. Johnson and the subsequent
        aggressive actions of Mr. Johnson and his companion, I
        find that appellant acted in self defense, that his
        actions in this regard were privileged, and that the
        agency's charge therefore cannot be sustained. To
        support his claim of self-defense appellant must prove
        by preponderant evidence that he used only so much force
        as was reasonably necessary to protect himself from the
        threatened assault by Mr. Johnson and his companion.
        See Fuller v. Department of the Navy, 60 M.S.P.R. 187,
        190 (1993), aff'd, 40 F.3d 1250 (Fed. Cir. 1994)(Table).
        According to the Restatement (Second) Torts § 63(1),
        "An actor is privileged to use reasonable force, not
        intended or likely to cause death or serious bodily
        harm, to defend himself against unprivileged harmful or

---

[1]     MES employees engaged in mail bag production like Harris
routinely carry and have access to box cutters.

*Ross T. Dicker, Esq.*
*July 7, 2003*
*Page 3*

offensive contact or other bodily harm which he reasonably believes that another is about to inflict intentionally upon him." **Having already been hit by Mr. Johnson and then facing the aggressive approach of Mr. Johnson and his companion, appellant, I find, reasonably believed that they intended to inflict bodily harm upon him. For the following reasons I also find that under the circumstances the force used by appellant was not "likely to cause death or serious bodily injury."**

March 12, 1999 Initial Decision, at 7-8. (Emphasis added.) The MSPB affirmed this Decision on December 13, 1999. As a result, MSPB directed the Postal Service to rehire Harris, pay him his back pay wages and pay his attorney's fees associated with the proceeding.

By contrast, the EEO rejected his Title VII discharge charge by asserting that he had to bring his disparate treatment claim simultaneously with his Civil Service claim before the MSPB. On his behalf, we subsequently filed a lawsuit in United States District Court for the District of Columbia. Notwithstanding the fact that Title VII, the CSRA and the relevant case law support distinct filing in this fashion, the district court dismissed the complaint essentially adopting (without memorandum opinion) the specious, unsupported reasoning offered by the EEO. But see Vinieratos v. Department of the Air Force, 939 F.2d 762 (9th Cir. 1991); Sloan v. West, 140 F.3d 1255 (9th Cir. 1997); see also Hill v. Department of the Air Force, 796 F.2d 1469, 1470-71 (Fed. Cir. 1986); Miller v. Department of the Air Force, 654 F.Supp. 186, 188 (D. Mass. 1988). The United States Court of Appeals for the District of Columbia Circuit affirmed the district court's dismissal without opinion.[*] Thus, Harris was denied the right to pursue his Title VII remedies irrespective of the statutes, the regulations and the case law.

Contemporaneously, I (along with local counsel) represented Harris' interests in a criminal matter in District Court of Maryland for Prince George's County. Trina Johnson had filed a criminal complaint against Harris, alleging that he had harassed her over the telephone and otherwise threatened her safety. Following two scheduled hearings and extended discussions with the prosecutor, we succeeded in having her dismiss this criminal matter.

---

[2]    *While Harris paid the attorney's fees requested in our retainer agreement in connection with the district court proceeding, he did not pay any fees in connection with the appeal.*



*Ross T. Dicker, Esq.*
*July 7, 2003*
*Page 4*

In either 2000 or 2001, the Postal Service began severely disciplining Harris over trumped-up, purported violations of conduct. The Postal Service proceeded to suspend him on at least three separate occasions. While my office petitioned the MSPB on his behalf when the Postal Service suspended him on two consecutive occasions, the MSPB dismissed this appeal on the grounds that the suspensions were purportedly distinct and did not constitute fifteen or more days in succession.

Finally, in the fall of 2002 the Postal Service terminated Harris for refusing to unjam the machinery at MES. Harris refused to attempt unjamming of the equipment in question based on information provided by an official from the Occupational Safety and Health Administration ("OSHA"). In August 2002, this OSHA official verbally informed Harris and a half of dozen union colleagues beforehand that untrained unit employees would not have perform such a procedure prior to receiving "professional training," i.e., training provided by a professional instructor or other professional particularly familiar with the machine. According to the OSHA official, said training could not be provided by untrained co-workers at MES, as the Postal Service had provided in the past. Based on this representation by the OSHA official and the earlier OSHA violation notice assessed against MES, Harris decided not clear the jam himself prior to receiving said training.

In terms of background, the Postal Service had suspended Harris earlier in the summer of 2002 for refusing to unjam the equipment. In response to this suspension, I recommended that the Union file a complaint with OSHA. As a result, OSHA issued a violation against MES for a "serious" safety violation. As part of the "settlement discussions" between the Union, MES and OSHA, I attended the aforementioned August 2002 meeting.

Unbeknownst to Harris or anyone else affiliated with the Union, MES later "cut a deal" with OSHA. MES had the OSHA violation reduced from a serious safety category to a less serious category, and, in effect, had OSHA "back-off" from any further enforcement of its institutional safety mandate vis-a-vis MES. With OSHA "neutered," MES proceeded to set up the groundwork for Harris' eventual termination.

Generally, a federal government employee cannot refuse to undertake a task unless he can objectively establish that the task could involve a palpable risk of death or bodily injury. The Postal Service seized upon this principle in order to show that Harris' refusal under these circumstances was tantamount to insubordination.

Consequently, Harris would not have any basis under the CSRA or any other statutory or common law scheme to challenge his

Ross T. Dicker, Esq.
July 7, 2003
Page 5

termination under these circumstances.  In sum, he did not have a
recognized private right of action to claim retaliatory discharge
under federal law.    The only apparent, potential means to
vindicating his rights was to have the Department of Labor advance
his rights on his behalf.

        Notwithstanding the apparent absence of standing, we
initiated a claim before MSPB on Harris' behalf   We had hoped the
Administrative   Judge   would  ultimately   conclude   that   Harris
detrimentally relied upon the OSHA official's representations in
refusing to handle this equipment.    This approach constituted a
novel, unprecedented, theory before the MSPB.[3]

        However, due to health reasons, I ultimately moved to
withdraw from Harris' MSPB appeal.[4]  It is my understanding that
soon thereafter Harris retained replacement counsel.  Based on my
telephone discussion with replacement counsel) it is also my
understanding that counsel reached the same foregoing conclusion
regarding Harris' apparent absence of rights under CSRA.

        In addition to my involvement in interfacing with OSHA,
I represented the Union's interests in a formal hearing before its
international union.    Trina Johnson and other MES employees had
petitioned the international, inter alia, to remove Harris from his
position as president for alleged misconduct.   As a result, in
part, of my preparation for and participation in this hearing and
my communications with counsel for the international union, the
internal charges against Harris were dismissed.

        I also represented the Union's interests in connection
with a charge filed with the United States National Labor Relations
Board ("NLRB").   The charge addressed various retaliatory actions
taken by the Postal Service against Union members.  Unfortunately,
the NLRB ultimately dismissed this charge by claiming that the
Union members could address their concerns through the grievance-
arbitration provision in their collective bargaining agreement.

        Finally, I have represented the interests of Union

--------

[3]    After expending over a dozen of hours in computer-
assisted legal research and reading hundreds of detrimental
reliance cases, I could not locate a MSPB case or a circuit court
case on point, i.e., one in which an employee relied on the
representation of a management official and/or third-party
government official in a similar fashion.

[4] I withdrew from the case due to the particular stress
associated with an actively litigated case.   Correspondingly, I
closed my office, and have worked out my home.

Ross T. Dicker, Esq.
July 7, 2003
Page 6

employees in connection with administrative discrimination charges
filed with the EEO. These charges essentially allege that MES has
paid black employees lower wages for their work than the hourly
wages designated by the Postal Service for their respective
positions. To my knowledge, these administrative discrimination
charges remain pending before the EEO. Once the EEO concludes its
investigation, I remain amenable to proceeding with their
complaints to United States District Court for the District of
Columbia (assuming, of course, the parties do not settle the
charges beforehand).[5]

        In summary, my office and I provided legal services to
Harris and/or Union in numerous matters for over five years. With
respect to Harris individually, his termination resulted from his
selfless zealousness in protecting the safety interests of MES
employees. Unfortunately, neither Harris nor his (current or
former) counsel could obtain relief under the CSRA or any other
legislative or common law scheme. With regard to the Union
employees, I remain willing to proceed with the forthcoming
potential lawsuit on behalf of the affected employees once the
administrative investigation by the EEO concludes.

        I duly appreciate your time and attention in advance.

                        Very truly yours,

                        Eric Steele

_____
[5]      I have received a total of $3,000.00 in compensation for
my services rendered on behalf of the Union in the pending EEO
action, the NLRB proceeding, the international union hearing and
the OSHA investigation. In addition, I have provided services on
Harris' behalf (e.g., the Maryland District Court case) in matters
directly related to the performance of his duties as Union
President.

ALBERT R. WYNN
4TH DISTRICT, MARYLAND

DEPUTY DEMOCRATIC WHIP

MEMBER
DEMOCRATIC CAUCUS
LEADERSHIP COUNCIL

COMMITTEE

ENERGY AND COMMERCE
———
ENERGY AND AIR QUALITY

HEALTH

WASHINGTON OFFICE
☐ 434 CANNON HOUSE OFFICE BLDG.
WASHINGTON, DC 20515-2004
(202) 225-8699
Web site: http://www.house.gov/wynn/

DISTRICT OFFICES
☐ 9200 BASIL COURT, #316
SPRINGDALE, MD 20774
(301) 773-4094

☐ 8601 GEORGIA AVENUE, #201
SILVER SPRING, MD 20910
(301) 588-7328

☐ 6009 OXON HILL ROAD
OXON HILL, MD 20745
(301) 839-5570

# CONGRESS OF THE UNITED STATES
## HOUSE OF REPRESENTATIVES
### WASHINGTON, DC 20515–2004

March 27, 2002

Mr. Wilbert Billy Harris
6108 State St
Cheverly, Maryland 20785-3850

Dear Mr. Harris:

Recently, I received a reply from the United States Postal Service (USPS), in response to my inquiry on your behalf. My office has apprised me on the issues related to your case, and has confirmed with the USPS that APWU was recently awarded a contract with the USPS. For your information, I am enclosing a copy of that correspondence.

If I can help on any other matter in the future, please do not hesitate to contact my Silver Spring office. Once again, thank you for contacting my office.

Sincerely,

Albert R. Wynn
Member of Congress

ARW:cz

Enclosure(s)

GOVERNMENT RELATIONS


**UNITED STATES**
**POSTAL SERVICE**

# RECEIVED

MAR 0 7 2002

Albert R.Wynn
Silver Spring Office

March 5, 2002

Honorable Albert R. Wynn
Member of Congress
8601 Georgia Avenue, #201
Silver Spring, MD  20910-3438

Dear Congressman Wynn:

This is in response to your January 28 letter on behalf of Mr. Wilbert B. Harris of Washington, D.C., regarding employment-related concerns.  Your letter was received in this office on February 19 as a result of safety precautions taken to sanitize government mail.

I understand your interest in this matter.  Mr. Harris is an American Postal Workers Union (APWU) official at the Mail Equipment Shop (MES) located in Washington, D.C. He objects to the "dual union" bargaining system currently in effect at the facility.  As information, the APWU represents the majority of employees at the MES and the International Association of Machinists (IAM) represents a small group of Tool and Die Shop employees.  Mr. Harris disagrees with the current system of union representation because he alleges it encourages illegal discriminatory practices.  He reports that "the Postal Service has carried out a systematic program of segregation affecting a substantial portion of the employees within the MES facility."

Let me first emphasize that MES employees who believe they are the victims of discrimination have followed a proper course of action by contacting the local Equal Employment Opportunity (EEO) office.  If an employee chooses to exercise all levels of appeal, the case is heard by an administrative judge of the Equal Employment Opportunity Commission (EEOC).  This ensures a decision that is independent of the Postal Service.

I regret Mr. Harris believes that the EEO complaint process does not adequately address employee concerns because "EEO counselors act as your representative, as opposed to counselors."  While postal management and union officials are responsible for providing requested information used during the EEO process, the EEOC, established by Title VII of the Civil Rights Act of 1964, and not the Postal Service, enforces the principal federal statutes prohibiting employment discrimination.

Page 2.

Additionally, both postal management and the APWU operate under a negotiated and mutually agreed upon labor contract, which addresses employee rights and responsibilities in the workplace. The contract is over 400 pages in length and union representatives have a contractual right to pursue any issues impacting work conditions in a number of ways up to and including the grievance-arbitration procedures. These procedures provide the proper forum for resolving disputes involving the interpretation of rules, the perception of offensive behavior, or adverse management actions. Employees and their representatives have the opportunity to present information in support of their position and receive an impartial hearing.

In his correspondence to APWU President Moe Biller, Mr. Harris states that "the APWU has a history for challenging rival unions for jurisdiction of employment." As the Postal Service does not participate in organizing non-union workers, Mr. Harris may wish to again send his suggestions to regional or headquarters union representatives for possible discussion at future bargaining sessions.

Finally, Mr. Harris notes that the Postal Service has negotiated a contract with the IAM, but not the APWU. Since contacting your office, I am sure he is aware that a new three-year contract with the APWU has been approved by Arbitrator Steven Goldberg. The term of the contract is from November 21, 2000, through November 20, 2003.

I hope this information is helpful. If I can be of assistance with other postal issues, please let me know.

Sincerely,

Rebecca A. Sumner
Government Relations Representative

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 01-5124**

Wilbert B. Harris,

Appellant,

v.

Postmaster General of the United States Postal Service,

Appellee

**MANDATE**

Pursuant to the provisions of Fed. R. App. Pro. 41(a)

ISSUED: _6/19/_   Filed On:

BY: _____ Deputy Clerk

ATTACHED:  ___ Amending Order
           ___ Opinion

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED   APR 31 2002

CLERK

September Term, 2001

00cv01074

Appeal from the United States District Court for the District of Columbia

Before: SENTELLE, RANDOLPH, and GARLAND, *Circuit Judges.*

### JUDGMENT

Harris, a Postal Service employee, appeals from a judgment of dismissal entered by the District Court based on his failure to exhaust his administrative remedy and improper attempt to split his "mixed case." We consider the appeal on the record and briefs of the parties and determine that the issues presented occasion no need for an opinion. *See* Fed. R. App. P. 36; D.C. Cir. Rule 36(b). It is

**ORDERED, ADJUDGED,** and **DECREED** that the judgment of dismissal entered by the District Court is hereby affirmed. "An aggrieved person may initially file a mixed case complaint with an agency . . . or an appeal on the same matter with the [Merit Systems Protection Board] . . ., but not both." 29 C.F.R. § 1614.302(b). Although Appellant raised on a discrimination claim before the Postal Service EEO, that claim stemmed from his improper termination - an action that could be appealed to the Merit Systems Protection Board (MSPB). Therefore, it must be considered a mixed case complaint. *See* 29 C.F.R. § 1614.302(a)(1). Appellant was required to have both his discrimination claim and his improper termination claim decided in the forum he initially elected - the MSPB. By failing to raise his discrimination claim before the MSPB, Appellant failed to exhaust his administrative remedies and cannot now seek review of that claim before the courts.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of this mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R. App. P. (b); D.C. Cir. Rule 41.

*Per Curiam*

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: _____

Michael C. McGrail
Deputy Clerk

**Bills** of cost must be filed within 14 days after
entry of judgment. The Court looks with disfavor
upon motions to file bills of costs out of time.

No. 1



UNITED STATES
POSTAL SERVICE™

# ASM

## Administrative Support Manual



## August 1990

*124.213 Inspection Service-Division.* The Inspection Service at the division level is responsible for all inspection and investigation activities within the division area served.

**124.22 Procurement and Supply Department HFUs**

*124.221 Materiel Distribution Centers.* There are two materiel distribution centers (MDCs), one at Somerville, NJ and one at Topeka, KS. MDCs are responsible for:

a. Procuring, storing, and issuing basic supplies for use in all postal facilities.

b. Arranging for the transportation of supplies to facilities.

*124.222 Mail Equipment Shop.* The Mail Equipment Shop, located in Washington, DC, is responsible for:

a. Manufacturing mail bags, sacks, and pouches.

b. Manufacturing locks and keys.

c. Manufacturing hardware items used for mail security and for customer service lobby equipment.

**124.23 Human Resources Group HFUs**

*124.231 National Test Administration Center (NTAC).* The National Test Administration Center, located in Alexandria, VA, reports to the Employee Relations Department and is responsible for:

a. Receipt and processing of requests to give examinations.

b. Preparing and distributing registers of eligible applicants and notices of ratings.

*124.232 Technical Training Center.* The Technical Training Center, located in Norman, OK, reports to the Training and Development Department and is responsible for:

a. Developing training materials for craft employees in maintenance and related crafts.

b. Performing training for technical employees.

*124.233 William F. Bolger Management Academy.* The William F. Bolger Management Academy, located in Potomac, MD, reports to the Training and Development Department and is responsible for:

a. Developing training materials for supervisors, postmasters, and other managerial employees.

b. Performing training for managerial employees.

**124.24 Information Resource Management Department HFUs**

*124.241 National Information Systems Support Center.* The National Information Systems Support Center, located in Raleigh, NC, is responsible for:

a. Designing new large-scale automated systems and writing the supporting program code.

b. Managing the nationwide voice and data communications system.

*124.242 Postal Data Centers.* The Postal Data Centers, located in Minneapolis, MN, New York, NY, St. Louis, MO, San Mateo, CA, and Wilkes-Barre, PA, are responsible for:

a. Systems analysis, computer programming, and other systems development activities.

b. Accounting, accounts payable, payroll, money order disbursing, claims and loss settlement, and other financial services.

c. Data processing and related computer services.

**124.25 Operations Support Group HFUs**

*124.251 Maintenance Technical Support Center (MTSC).* The Maintenance Technical Support Center, located in Norman, OK, reports to the Engineering and Technical Support Department and is responsible for:

a. Developing policies, programs, methods, and standards for the maintenance of mail processing equipment.

b. Issuing guidelines to field managers on building systems and mail processing equipment maintenance procedures.

*124.252 Engineering and Development Center.* The Engineering and Development Center, located in Merrifield, VA, reports to the Engineering and Technical Support Department and is responsible for:

a. Providing engineering and near-term development support for letter mail equipment, packaged mail equipment, delivery and retail equipment, and associated systems and software.

b. Directing near-term development and modifications to equipment and components to increase efficiency and reliability, and to improve safety.

c. Conducting tests to evaluate new equipment for Postal Service use; performing failure analyses on equipment and components.

d. Providing applied engineering to customize commercial technology and equipment for postal use.

**124.26 Address Information Center.** The Address Information Center, located in Memphis, TN, reports to the Office of Address Information Systems, Marketing and Customer Service Group, and is responsible for:

a. Developing policies for and providing technical guidance and computer support to field Address Information System units and field Computerized Forwarding System units.

b. Providing nationwide service and technical guidance for postal customers requiring support related to address information systems.

**124.27 Chief Field Counsels.** The Chief Field Counsels report to the General Counsel and are responsible for providing legal representation services within a regional geographic area, including representation before the Board of Contract Appeals, liaison with U.S. Attorneys on contract, real estate, and tort litigation, as well as personnel related matters, such as labor/management relations, Equal Employment Opportunity, Merit Systems Protection Board, National Labor Relations Board, and district court actions.

DISTRICT OF COLUMBIA COURT OF APPEALS
500 Indiana Avenue, N.W.
Washington, D.C.  20001


Ruth J. Gantt                                              (202) 879-2749
Information Center                                         **Area Code**
**Supervisor**


                          December 12, 2005


Mr. Wilbert B. Harris
6108 State Street
Cheverly, MD 20785


Mr. Harris:

Per our conversation, of December 12,2005, your Petition for Review was
reviewed by our Legal Staff and it was determined that your case should have
been filed with the United States Court of Appeals as requested in the Final
Order from the U.S. Merit Systems Protection Board.



                         Sincerely,

                         Ruth J. Gantt
                         Information Center Supervisor

# DISTRICT OF COLUMBIA COURT OF APPEALS

## PETITION FOR REVIEW

APPEAL NO. _____

[stamp] OCT 1 7 2005

Wilbert B. Harris

**Your Name**                                **PETITIONER,**                    DC-0752-05-0318-I-I

v.

                                                                                    **Agency No.**

United States Postal Service

**Agency Name**

**RESPONDENT.**

I,   Wilbert B. Harris                                                    , wish to appeal to the

District of Columbia Court of Appeals from the decision or order of the   Merit

Systems Protection Bd. entered on the   Twentieth (20th)   day of _____

_____ September _____, 20 05 _____.

**Statement of the Nature of the Proceedings and Grounds Relied On (continue on reverse side if needed):**

— The Appellant filed a timely formal complaint on prohibited discrimination with the Agency's EEO Department on his removal. The Agency has not issued a final decision on the formal complaint and over 120 days have passed. I appealed the matter to the Merit System Protection Board (MSPB) pursuant to 1201-154-5 U.S.C. 7702(e)(2). The

— MSPB dismissed the appeal without a hearing on merits. Accordingly, for this reason and all of the other forgoing reasons, request a judicial review from the court on both

— discrimination and non-discrimination issues pursuant to 5 U.S.C. 7702 Section 717(c) of the Civil Rights Act of 1964, as amended (42 U.S.C. 2000e-16(c) of the Age

— Discrimination in Employment Act of 1967, as amended (29 U.S.C. Sections 633a(c)).

**Name, address and telephone number of all other parties and counsel (continue on reverse side if needed):**

_____

_____

_____              Wilbert B. Harris

**Signature of Petitioner or Attorney**        **Printed Name Petitioner or Attorney**

                                                6108 State Street, Cheverly, MD 20785

                                                **Address**

                                                301-773-6108

                                                **Telephone**

**NOTE: Attach a copy of the decision/order issued by the District of Columbia agency from which this appeal is taken.**

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

WILBERT B. HARRIS,
          Appellant,

          v.

UNITED STATES POSTAL SERVICE,
          Agency.

DOCKET NUMBER
DC-0752-05-0318-I-1

DATE: September 20, 2005

Wilbert B. Harris, Cheverly, Maryland, pro se.

Stephen W. Furgeson, Washington, D.C., for the agency.

### BEFORE

Neil A. G. McPhie, Chairman
Barbara J. Sapin, Member

### FINAL ORDER

The appellant has filed a petition for review in this case asking us to reconsider the initial decision issued by the administrative judge. We grant petitions such as this one only when significant new evidence is presented to us that was not available for consideration earlier or when the administrative judge made an error interpreting a law or regulation. The regulation that establishes this standard of review is found in Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).

After fully considering the filings in this appeal, we conclude that there is no new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome. 5 C.F.R. § 1201.115(d). Therefore, we DENY the petition for review. The initial decision of the

2

administrative judge is final. This is the Board's final decision in this matter. 5 C.F.R. § 1201.113.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the court no later than 60 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the

court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's <u>Rules of Practice</u>, and Forms <u>5</u>, <u>6</u>, and <u>11</u>.


FOR THE BOARD:

_Bentley M. Roberts, Jr._
Clerk of the Board

Washington, D.C.

## CERTIFICATE OF SERVICE

I certify that this Order was sent today to each of the following:


Certified Mail                Wilbert B. Harris
                              6108 State Street
                              Cheverly, MD 20785

U.S. Mail                     Stephen W. Furgeson
                              United States Postal Service
                              Capital Metro Area Law Office
                              400 Virginia Avenue, SW
                              Suite 650
                              Washington, DC 20024-2730



_____September 20, 2005_____                    Dorothy Plummer
         (Date)                                 Dorothy Plummer
                                                Paralegal Specialist

## NOTICE OF DOCKETING

### O6-3145 - HARRIS V USPS

Date of docketing: 02/02/06

Petition for review of: Merit Systems Protection Board case no.  DC0752050318-I-1

Petitioner(s):  WILBERT B. HARRIS

Critical dates include:
   Date of docketing.  See Fed. Cir. R. 12 and 15.
   Filing fee due.  See Fed. R. App. P. 15(e) and Fed. Cir. R. 52.
   Certified list.  See Fed. Cir. R. 17.
   *Statement concerning discrimination.*  See Fed. Cir. R. 15(c).
   Entry of appearance.  See Fed. Cir. R. 47.3.
   Certificate of interest.  See Fed. Cir. R. 47.4.
   Docketing Statement.  (Due within 14 days of the date of docketing.)  See the en banc order
      dated August 1, 2005.  [Counsel can download a copy of the order and guidelines at
      www.fedcir.gov.]
   Requests for extensions of time.  See Fed. Cir. R. 26 and 27.  **N.B. Delayed requests are not
      favored by the court.**
   Briefs.  See Fed. Cir. R. 31.  [A pro se party must not file his or her informal brief until after the
      certified list has been filed and served.]  **N.B. You will not receive a separate briefing
      schedule from the Clerk's Office.**
   Oral argument schedule conflicts.  See Practice Note following Fed. Cir. R. 34.

Pro se parties should refer to the GUIDE FOR PRO SE PETITIONERS AND APPELLANTS.

Attachments:
   Official caption to all.
   Docketing Statement.  (Only in cases where all parties are represented by counsel.)
   Rules of Practice to pro se parties.  [Counsel can download the rules from www.fedcir.gov or call
      202.633.6550.]
   Entry of appearance form to all.
   Statement concerning discrimination to petitioners.
   Informal brief form to pro se parties.
   Motion and Affidavit for Leave to Proceed in Forma Pauperis form to petitioners owing the
      docketing fee.
   Copy of petition for review to Merit Systems Protection Board and to respondent's counsel.

Jan Horbaly
Clerk

cc:    Clerk, Merit Systems Protection Board
       David M. Cohen, Esq., Department of Justice
          1100 L Street, N.W., Room 12124, Washington, DC 20530
       Wilbert B. Harris

No. 06-3145

## ENTRY OF APPEARANCE

(INSTRUCTIONS:  Counsel refer to Federal Circuit Rule 47.3.  Pro se petitioners and appellants read paragraphs 1 and 18 of the Guide for Pro Se Petitioners and Appellants.  File this form with the clerk and serve it on the principal attorney for each party.)

Please enter my appearance (select one):

_____ Pro Se    _X_ As counsel for: United States Postal Service

I am, or the party I represent is (select one):

_____ Petitioner   _X_ Respondent/   _____ Amicus Curiae
                         Appellee

_____ Appellant   _____ Appellee   _____ Intervenor

As amicus curiae or intervenor, this party supports (select one):

_____ Petitioner or appellant   _____ Respondent or appellee

All communications with me should be made as follows:

Name:

Law Firm (counsel only):    Allison Kidd-Miller
                            Department of Justice - Civil Division
                            Commercial Litigation
Address:                    1100 L Street, N.W., Room 12004
City, State, and ZIP:       Washington, D.C. 20530
Telephone:                  (202) 307-1011
Fax #:                      (202) 307-0972
E-mail address:             Allison.Kidd-Miller@usdoj.gov

Statement to be completed by counsel only (select one):

   _X_   I am the principal attorney for this party in this case and will accept all service for the party.  I agree to inform all other counsel for the party in this case of the matters served upon me.

_____   I am replacing _____ as principal attorney.

_____   I am not the principal attorney for this party in this case.

Date admitted to Federal Circuit bar (counsel only): _____

This is my first appearance before the U.S. Court of Appeals for the Federal Circuit (counsel only): ___ Yes  _X_ No

_____ A courtroom accessible to the handicapped is required
            if oral argument is scheduled.

____2-22-06_____              _Allison Kidd-Miller_____
    Date                            Signature of Pro Se or Counsel

CC:  Wilbert B. Harris
     6108 State Street
     Cheverly, MD 20785

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

HARRIS v. USPS
No. 06-3145
ENTRY OF APPEARANCE

(INSTRUCTIONS:  Counsel refer to Federal Circuit Rule 47.3.  Pro se
petitioners and appellants read paragraphs 1 and 18 of the Guide for
Pro Se Petitioners and Appellants.  File this form with the clerk and
serve it on the principal attorney for each party.)

Please enter my appearance (select one):
       ____ Pro Se   X   As counsel for:  **United States Postal Service**
                                          _____
                                               Name of Party

I am, or the party I represent is (select one):
       ____ Petitioner   X ____ Respondent    _____ Amicus Curiae
       ____ Appellant      _____ Appellee    _____ Intervenor

As amicus curiae or intervenor, this party supports (select one):
       _____ Petitioner or appellant   _____ Respondent or appellee

All communications with me should be made as follows:

       Name:                        DONALD E. KINNER
                                     ASSISTANT DIRECTOR
       Law Firm (counsel only):     DEPARTMENT OF JUSTICE
       Address:                     1100 L STREET, N.W., Rm. 7008
       City, State, and ZIP:        WASHINGTON, D.C.  20530
       Telephone:                   (202) 305-7562
       Facsimile:                   (202) 305-7643
       E-mail address:              DonaldKinner@usdoj.gov

Statement to be completed by counsel only (select one):

       _____ I am the principal attorney for this party in this case and
              will accept all service for the party.  I agree to inform
              all other counsel for the party in this case of the matters
              served upon me.

       _____ I am replacing _____ as principal attorney.

       X   I am not the principal attorney for this party in this case.

This is my first appearance before the U.S. Court of Appeals for the
Federal Circuit (counsel only):    _____ Yes   X   No

       _____ A courtroom accessible to the handicapped is required    if
              oral argument is scheduled.

2-22-06                          _Donald E. Kinner_
Date                             Signature of Counsel

cc:  **Wilbert B. Harris**

HARRIS v. USPS

No. 06-3145

## ENTRY OF APPEARANCE

(INSTRUCTIONS: Counsel refer to Federal Circuit Rule 47.3. Pro se petitioners and appellants read paragraphs 1 and 18 of the Guide for Pro Se Petitioners and Appellants. File this form with the clerk and serve it on the principal attorney for each party.)

Please enter my appearance (select one):

_____ Pro Se   __X__ As counsel for: United States Postal Service

I am, or the party I represent is (select one):

_____ Petitioner   _X_ Respondent/   _____ Amicus Curiae
                         Appellee

_____ Appellant   _____ Appellee   _____ Intervenor

As amicus curiae or intervenor, this party supports (select one):

_____ Petitioner or appellant   _____ Respondent or appellee

All communications with me should be made as follows:

Name:                              David M. Cohen
                                   Director
Law Firm (counsel only):           Department of Justice - Civil Division
                                   Commercial Litigation
Address:                           1100 L Street, N.W., Room 12124
City, State, and ZIP:              Washington, D.C. 20530
Telephone:                         (202) 514-7300
Fax #:                             (202) 307-0972
E-mail address:                    national.courts@usdoj.gov

Statement to be completed by counsel only (select one):

___   I am the principal attorney for this party in this case and will accept all service for the party.  I agree to inform all other counsel for the party in this case of the matters served upon me.

___   I am replacing _____ as principal attorney.

_X_   I am not the principal attorney for this party in this case.

Date admitted to Federal Circuit bar (counsel only): _____

This is my first appearance before the U.S. Court of Appeals for the Federal Circuit (counsel only): ___ Yes _X_ No

_____ A courtroom accessible to the handicapped is required
            if oral argument is scheduled.


___6-22-06_____                    _____
     Date                           Signature of Pro Se or Counsel

cc: Wilbert B. Hrrris



 # U.S. MERIT SYSTEMS PROTECTION BOARD

### Office of the Clerk of the Board
1615 M Street, N.W.
Washington, D.C. 20419-0002
Phone: 202-653-7200; Fax: 202-653-7130; E-Mail: mspb@mspb.gov

06-3145

(FRAUDULENT CONCEALMENT)

## ATTESTATION

I HEREBY ATTEST that the attached index represents a list of the documents comprising the administrative record of the Merit Systems Protection Board in the appeal of *Wilbert B. Harris v. United States Postal Service*, MSPB Docket No. DC-0752-05-0318-I-1, and that the administrative record is under my official custody and control on this date ⟶

on file in this Board.

February 21, 2006
_____
Date

*Jacquelin Wilson*

Bentley M. Roberts, Jr.
Clerk of the Board

# INDEX

## Wilbert B. Harris v. UNITED STATES POSTAL SERVICE

### Docket No. DC-0752-05-0318-I-1

### Volume I

| TAB | DOCUMENT DESCRIPTION | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|
| 1 | Petition for Appeal Received | March 2, 2005 |
| 2 | MSPB Acknowledgement Order | March 8, 2005 |
| 3 | Agency Designation of Representative | March 15, 2005 |
| 4 | Appellant's Request for Hearing | March 17, 2005 |
| 5 | Appellant's Exhibits | March 22, 2005 |
| 6 | Appellant's Submission: EEO Decision | March 28, 2005 |
| 7 | Appellant's Correspondence Re: Discovery | March 31, 2005 |
| 8 | Agency Motion to Dismiss | April 4, 2005 |
| 9 | MSPB Status Conference Order | April 12, 2005 |
| 10 | Appellant's Notice to Pursue Appeal | April 25, 2005 |
| 11 | MSPB Summary of Status Conference | April 25, 2005 |
| 12 | MSPB Initial Decision | May 3, 2005 |
| 13 | Closed Case Correspondence ( Appellant's Motion to Disqualify Judge) | May 3, 2005 |
| 14. | Closed Case Correspondence ( Appellant's Response To Agency Motion to Dismiss) | May 3, 2005 |

10f2

INDEX                                                    Page 1 of 1

WILBERT B. HARRIS
v.
UNITED STATES POSTAL SERVICE

MSPB Docket No. DC-0752-05-0318-I-1

IA-REFORM ACT MERIT - PETITION FOR REVIEW

| TAB | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|-----|-------------------------|-----------------------------|
| 1 | Appellant - Petition for Review | June 06, 2005 |
| 2 | MSPB - Petition For Review Acknowledgement Letter | June 10, 2005 |
| 3 | MSPB - Final Order | September 20, 2005 |

2 of 2

## CERTIFICATE OF SERVICE

I hereby certify that the attached Document(s) was (were) sent as indicated this day to each of the following:


Petitioner

U.S. Mail                 Wilbert B. Harris
                          6108 State Street
                          Cheverly, MD 20785

Respondent

U.S Mail                  David Cohen, Director
                          Commercial Litigation Branch
                          Civil Division Classification Unit
                          U.S. Department of Justice
                          1100 L Street, N.W., Room 12124
                          Washington, DC  20530


U.S. Mail                 R. Andrew German
                          Chief Counsel, Appellate Division
                          Law Department
                          475 L'Enfant Plaza, S.W.
                          Washington, DC  20260



_____                    _____
    February 21, 2006                       Bentley M. Roberts, Jr.
        (Date)                                 Clerk of the Board

Docket No. DC-0752-05-0318-L-1
Party:      Appellant

Wilbert B. Harris
6108 State Street
Cheverly, MD 20785

**Please retain this paper.**

A party or representative to a Board processing who registers as an e-filer may send and receive pleadings and Board documents in electronic form on an ongoing basis. Registration as an e-filer constitutes consent to accept electronic service of pleadings and Board documents, which would be sent to your e-mail address in the form of PDF documents. To register as an e-filer, go to the e-Appeal web site: https://e-Appeal.mspb.gov

Your e-filing identification number is **4728921**.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
## 717 MADISON PLACE, N.W.
## WASHINGTON, D.C. 20439

JAN HORBALY
CLERK

**MAR - 2 2006**

TELEPHONE: 633-6550
AREA CODE 202

Wilbert B. Harris
6108 State St.
Cheverly, MD 20785

     Re:    Harris v. USPS, 06-3145

Dear Mr. Harris:

     This is in reference to the petition for review recently received by this court.

     The court recently received, from the United States Court of Appeals for the District of Columbia Circuit, a copy of your petition for review. As you were informed by the Merit Systems Protection Board in its final decision, this court has jurisdiction to review the decision of the Merit Systems Protection Board. Thus, we assume that you intended to ask this court to review the Board's decision and not the District of Columbia Circuit. If you do not wish to be in this court, please promptly inform us.

                             Very truly yours,

                             Jan Horbaly

cc:    Allison Kidd-Miller, Esq.

jh/ds

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## O R D E R

The petitioner having failed to pay the docketing fee required by Federal Circuit Rule 52 (a)

(1) and to file the required Statement Concerning Discrimination, it is

ORDERED that the petition for review be, and the same hereby is, DISMISSED, for failure

to prosecute in accordance with the rules.

FOR THE COURT,

*Jan Horbaly*   Clk

Jan Horbaly
Clerk

03/14/06

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

MAR 1 4 2006

JAN HORBALY
CLERK

cc:   Clerk's Office, MSPB
      WILBERT B. HARRIS
      Allison Kidd-Miller

**ISSUED AS A MANDATE:** <u>03/14/06</u>

HARRIS V USPS, 2006-3145
MSPB - DC0752050318-I-1

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

06-3145

WILBERT B. HARRIS,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

ORDER

(A1)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLOMBIA

WILBERT B. HARRIS

Plaintiff,

Vs.

Civil Action No. 06-06 RCL

POSTMASTER GENERAL OF THE UNITED
STATES POSTAL SERVICE,

Defendant.

PLAINTIFF'S MOTION TO TERMINATE HIS
REPRESENATIVE DAVID A BRANCH AND TO RESPOND TO
DEFENDANT PRO SE FOR THE FOLLOWING REASONS:

THE PLAINTIFF FILED A FORMER COMPLAINT WITH THE EMPLOYERS
EEO AGENCY ON A SEGREGATED FACILITY A PROPOSED REMOVAL
AND A SUBSEQUENT REMOVAL

(A) ATTORNEY BRANCH INSPITE OF HAVING DIRECT EVIDENCE OF
PLAINTIFF"S COMPLAINT FAILED TO PURSUE PLAINTIFF"S LAWFUL
OBJECTIVES

(B) ATTORNEY BRANCH MADE ERRONEOUS ASSERTION OF
PLAINTIFF"S ELECTED CHOICE OF FORM TO PROCEED

(C) BRANCH FAILED TO KEEP PLAINTIFF REASONABLY INFORMED
ON KEY CORRESPONDENCE DEFENDANT SUBMITTED RESPONSE TO
COMPLAINT ON 07/20/06    THE PLAINTIFF RECEIVED IT ON 8/15/06
AFTER HE INITIATED CONTACT WITH MR BRANCH

(D) BRANCH MADE INTENTIONAL FALSE AND DISHONEST
STATEMENTS

(E) BRANCH BETRAYED MY TRUST AND INTERFERED WITH THE
ADMINISTRATION OF JUSTICE PLAINTIFF ASKS THAT REQUEST BE
GRANTED

Wilbert B Harris
6108 State ST
CHeverly MD 20785
301-773-6108

## CERTIFICATE OF SERVICE

I, Wilbert B. Harris, will mail a copy of this motion to attorney David V. Branch address AND
today August 25, 2006.
1825 Connecticut Avenue, NW
Suite 690
Washington DC 20009·

W, MARK NEBEKER
ASSISTANT United States Attorney
(Civil Division)
555 4th Street, N.W
WASHington, DC 20530

Wilbert B. Harris
6108 State Street
Cheverly MD. 20785
301-773-6108

This is for a case already existing in this court

UNITED STATES DISTRICT COURT
FOR THE DISRICT OF COLOMBIA

Wilbert B. Harris

      Plaintiff

        Vs.                            Civil Action No. 06-06 RCL

United States Postal Service
Postmaster General

      Defendant

## ORDER

Upon consideration of Plaintiff's Motion requesting the termination of representative David V. Branch from the above reference case therefore and for the reason set forth in Support thereof it is this 25th day of August 2006, hereby,

      Ordered that, Plaintiff's motion be and is hereby granted.

                               United States District Judge

Wilbert B. Harris
6108 State Street
Cheverly MD 20785

Attorney David A. Branch
1825 Connecticut Avenue, NW
Washington DC 20009

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this _25_ day of October 2007, that service

of the foregoing "Plaintiff's Motion for Relief from Order, and Summary Relief Judgment

Granted for Plaintiff, and a Class of Racial Black Minorities (Pursuant to Fraud,

Conspiracy/Collusion) and Memorandum in Support Thereof" has been made by mailing

copies of thereof to:

W. Mark NEBEKER
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC 20530


Wilbert B. Harris
6108 State Street
Cheverly, MD 20785
(301) 773•6108